Your Honor, Counsel, my name is John Allman. I represent Samantha Bright in this appeal. This is an appeal from a motion to dismiss granted by Judge Blyer. It is a de novo standard of review for the court. It's a unique case because I think the factual circumstances of the case make it one of first impressions for the court. And I will briefly review the facts of the case in that the plaintiff went to a dentist and had some teeth extracted and was given a prescription for Vicodin that was called into the defendant's pharmacy. The pharmacy somehow thought that that was a fraudulent call-in and they called the police and had my client arrested. She was arrested on a Friday evening, November 13th, and she was incarcerated until the following Monday when she was released. During the time that she was in jail, the unique facts of the case are that the defendant had an obligation, I thought, and still do, to contact the correct doctor to ascertain whether the prescription was, in fact, false or not. While my client was incarcerated, she had no access to an I think there are those unique factual circumstances that equity would say that her statute of limitations didn't run until the start of the day when she was released until two years later. There are no cases on point, and there are several legal principles that apply in a general way. One of them is the continued violation rule, which is where things that continually happen that doesn't toll the statute of limitations each new day is a new act. In this case, we've alleged that the defendant had a duty on each day that my client was incarcerated to ascertain and investigate the truth of her allegation that Dr. Mullins did, in fact, write the prescription at issue here. The judge ignored that and dismissed the case. I also thought that the second part of that was that there was equitable toll. If the defendant in this case had done something at the end of the statute of limitations to prohibit my client from filing her claim or investigating it, the statute would be tolled. My argument is that why doesn't that apply in the beginning of the case when she's in their control, they're the ones who made the complaint, they're the ones who could have said, oh, we called Dr. Mullins, which they did on Monday, and tell the police, oh, the lady really didn't have a false prescription, let her out of jail. Mr. Allman, I'm sorry to interrupt. Was there a charging document issued? I'm sorry, Judge? Was there a charging document issued that Friday night? That I don't know, Judge. I mean, what was she being held on? It's my understanding, and what I've said in the record is that they called and that the police came and they arrested her on the spot, took her and her daughter to jail. There was no paperwork, there was no charge. On Monday, she was released. So, she wasn't given a piece of paper that would even say who the charging entity was? Judge, I don't, that's not in the record and I don't know that fact, I'm sorry. It's my understanding she was arrested based upon the statements given to the police from the CVS Pharmacy employees. So, your argument is she couldn't have known who, who was the person responsible for making the charge? Judge, my argument is, and generally that's it, that when she's arrested, she doesn't know, and there's nothing in the record to say whether that is the CVS Pharmacy. She thought that she had, well, she did have a valid prescription. What we know later is that they called the wrong doctor to verify whether that was the correct prescription or not. At the time of her arrest, I don't know that she knew that. She had no way, while she was incarcerated on Friday, Saturday, Sunday, and Monday, without contact with an attorney or anybody else, how to ascertain what happened to her or the allegations that were made against her. This could have been an arrest by the police where they made an error. And if they made an error, they may have immunity from that. It could have been that they contacted Dr. Mullen's office and somebody at Dr. Mullen's office could have said, no, we didn't like that prescription. It could have been somebody at the pharmacy called the wrong person or the wrong Dr. Mullen's or nobody at all, and said whatever they said. So there's a variety of situations which my client could not ascertain while she's incarcerated. Was she arraigned? Was she ever arraigned? Noted that weekend? No. She was in jail on Friday. She got there late Friday night. I believe that it was between 8 and midnight. She wasn't arraigned on Saturday or Sunday? No, she was held until Monday. Was she arraigned on Monday? Judge, I don't know that. The record that I have does not say that. It is my understanding, which is not in the record, that her husband on Monday got a hold of the state's attorney and somehow Dr. Mullen's was contacted and she was released. There was no subsequent charge. She was never, when she was released, she was released. And I think all of the cases that typically would apply in this, equitable tolling, the discovery rules, all of those things kind of apply and they kind of don't. But the reason that all of those things together make this case for the plaintiff is that she was incarcerated. And she was incarcerated by the defendant, by their actions as alleged in the complaint, and she had no way to do anything. But incarceration in and of itself isn't a legal disability, is it? No, it's not, Judge. Is there any case that you say it's kind of a little bit of this, a little bit of that? Is there any case that supports that she can be incarcerated from, was it three days or four days? Four days. And then the remaining of the two-year statute, she doesn't have any duty to ascertain whether or not she has a cause of action? Judge, there's no cases that I'm aware of. And my position is that a decision by this court can be on these unique, limited facts where she's incarcerated based on the actions of the defendant, and that she has no contact with an attorney, she isn't arraigned, she has no way to ascertain what happened to her, aside from the fact that she had surgery and was prescribed a Vicodin, which she didn't get when she was in jail for those four days. That may be important, it may not be, but I think it goes to her ability to have a thoughtful process to think about this. I think that at the minimum, that Judge Blyer was in error in not letting the case go forward and let those factual issues develop, which is where I thought the case should go. And then we would know more about those things during those four days, but based on the allegations and the complaint, which were deemed as true, I thought those were sufficient to withstand the rest of this test. And I think it's unique in that the continuing court, the continuing violation of the discovery rule, those all have to do with people who have the capacity and the ability to investigate, to think things out, to look at them, and they're not being withheld and constrained by the acts of the defendant against who the claim arises. But the discovery rule is generally applied to a situation where they're not able to ascertain a cause of action during the entire statute of limitations period. Well, it can apply even, Judge Eve, and I didn't cite a case, but it applies even to short term. If this lady, as an example, had been incapacitated and in the hospital in a coma, the statute would not have run until she woke up. She would have been under a legal disability. But she's not under a legal disability. I understand. So you're trying to kind of pick and choose, well, parts of theories that pertain to your factual scenario. That's correct. And Judge, in my mind, there's no difference. If they had taken my lady and stuck her in the basement of a house and held her captive for five days, would the statute run the day that she's taken or the day that she's released? In this case, she didn't know who took her and stuck her in the basement, but somebody did. And I believe that under, again, as you said, we're taking parts of all of these equitable theories and piecing them together to get to the day when she's released. She could not, much like somebody who's in a coma, she could not investigate, know, or talk to anybody about her case. And those things were all controlled by the defendant in this case. Is she claiming a tort for every day she was incarcerated? I'm sorry, Your Honor? Is she claiming injuries and damages for every day she was incarcerated? Yes. So how is this different from the physician who continues to be negligent over time and the statute runs from the last point of negligence? I think that's it, Judge. I think it's the same thing. I think the statute runs from the last point of negligence. I thought each day they had an obligation to investigate and had a duty to investigate to get her released. And they're negligent for not doing so? Yes. And is that the way it was pled on the 15th? Yes. That there was a continuum throughout that day, that weekend? Judge, in the amended complaint, it is alleged that on each day they had an obligation and a duty to investigate her actual claim of innocence. And I can cite that to you. This is for each day, but it says on November 14th, the defendant knew or should have known that the plaintiff had an actual claim of innocence and the defendant had a duty to investigate her claim that she had a legal prescription from Dr. Maltz. And that was alleged for the 13th, 14th, 15th, and 16th. And I thought they did have a duty to do that. The burden on them to do that would be very small. They had to call the right doctor. In conclusion, Your Honors, I think it's a unique set of facts. I think the Court can reverse and remand on the limited issue of one of these factual circumstances that the motion to dismiss should not have been granted. Thank you. Thank you, Counsel.  May it please the Court, Counsel? This is a pretty straightforward statute of limitations issue. The facts that are set forth in the second minute complaint control, there was no discovery taken in this case. What we have pled in the second minute complaint is that CVS wrongfully contacted the West Frankfort Police Department on November 13th, 2009. After that, there's no conduct alleged on the part of CVS. Beyond that, the allegations are that the West Frankfort Police Department arrested the plaintiff, that she was incarcerated in the Frankfort County Jail, and that she was released on the 16th. Plaintiff has kind of done a shotgun theory to try to get this case within the statute of limitations. I think, opposing Counsel's argument, there was a concession that none of these theories on their own, individually, would allow for a tolling to get this case within the statute of limitations. But the hope is that collectively, taken together under the facts that's pled in the second minute complaint, there could be some equitable theory put together based on these. The problem is that each of these theories don't apply to this case, and the case law is pretty straightforward as to why they don't. The first theory that plaintiff has put forward is that the continuing tort rule would mean that the defendant continually did a new, tortious act every day until she was released on the 16th. Unfortunately, that's not what's pled in the second minute complaint. What's pled is that the only conduct by CVS was that it called the West Frankfort Police Department on the 13th. After that, there's no affirmative conduct pled or alleged on the part of CVS. And the case law is pretty clear that in order for the continuing tort rule to apply, there's got to be continuing unlawful acts in conduct, not continuing ill effects from an initial act. The Bank of Raven, the City of Chicago case, which was cited in our brief first district case, looked at whether or not the City of Chicago, which had built a subway station over the bank's property, whether or not the fact that the subway continued to be there each day it was there until it was removed was another act by the City of Chicago that constituted a continuing tort. The court said no. The initial conduct that constituted the tort was building the subway. It was invading, trespassing in the first place. After it was completed, beyond that, it's just a continuing ill effect. It's analogous to this case. The allegation is that a defendant made a call to the police department. The police department responded and arrested and incarcerated the plaintiff. Beyond that, there's no continuing duty to remedy or cure an initial wrongful conduct. If that were the case, you could take this in perpetuity. A car accident case, the plaintiff or the defendant, rather, would be under a continuing obligation to make sure that the plaintiff is cured of any injuries taken from that car accident. Until the plaintiff is cured from those injuries, the statute doesn't begin to run. Do you believe that after the first day, the duty shifted to the West Frankfort police? Yes, because at that point, the conduct that was occurring was the West Frankfort police department holding the plaintiff. They make independent decisions. Obviously, they do investigations. They take witness statements and they take charges that are filed. Beyond that, there have been several statements that CBS was holding her. CBS wasn't holding her. It wasn't CBS's jail. CBS didn't charge her with criminal conduct. CBS doesn't have authority to do that. But if she had filed her suit in time, those that continued holding could have been part of her remedy or her damages? Absolutely. Absolutely. In the same way that if you're injured in a car accident and you later find out that you have continuing injuries that are ongoing, continuing road terror, anything of that nature that's continuing to go on, you're not just entitled to damages from the day of the accident. You're entitled to anything that was approximately caused by that event as damages. However, those are continuing ill effects, which the courts have found don't constitute independent torts, just acts on their own. And therefore, the continuing tort theory doesn't apply. I think we addressed in our brief the question of legal disability because that was brought up in pleadings, but I think today counsels conceded that incarceration doesn't constitute a legal disability. So I'll move beyond that. The next theory that plaintiff has submitted is that there should be equitable tolling. And I think that the case law is pretty clear that equitable tolling is to apply if the plaintiff cannot discover that there's an actual wrong for no fault of her own during the period of limitations. It's not meant to be used to toll a few days here or there during the limitations period whereby the plaintiff couldn't serve her rights, anything of that nature. The courts have held that. For instance, if the plaintiff is able to discover that a wrongful act occurred that caused her injuries within a statute of limitations period, then there's no basis for tolling for her rights. Well, let me ask you the same question I asked opposing counsel. Was there a complaint given to her? Was there an information filed? Was there an arraignment? I mean, was she just put in a cell and held there for the weekend? I mean, was there any instance at which there was some communication, even a semi-formal way, as to the charge and why she was there? Sure. In this matter, we never moved beyond the pleading stage, and so no discovery was conducted. I don't know the answer to that question. Well, let me ask you this. After her discharge, did she make any inquiry to CVS? She, through counsel, sent a letter of representation to CVS in November of 2010. And did CVS respond? CVS didn't respond. So she made an effort to find out the information, and it was withheld by CVS? No, there was no information withheld. I don't know what information CVS would have withheld. Counsel for plaintiff simply sent a letter of representation letter to CVS that he was representing her in this matter. Beyond that, there was no correspondence or communication between CVS and plaintiff. And is that the same counsel that's representing her now? Yes, I believe so, Your Honor. Okay, so that letter was sent when? November of 2010. And did the letter ask for any information? I do not believe so. Is it part of the record? It is not, no. And, again, this is not a case where CVS had information that would have given plaintiff an understanding that she had an action to go wrong and was withholding it. CVS had no more information than plaintiff. And this kind of goes into the last theory, whether or not the discovery. How can you make that statement, that CVS had no more information than the plaintiff, if you held the knowledge of who had turned in this false prescription? Somebody made a call to the West Frankfort police. Certainly somebody made a call. And the only people that would know that is CVS, right? Well, no. The West Frankfort police presumably would know that as well. Okay. And I assume if any charges were made, the plaintiff would have known that as well. There was never an attempt to gather information from CVS. And the truth of the matter is, this is analogous case to being an instantaneous or traumatic tortious act. It's one event. She's incarcerated on November 13th. She understands she's in jail. There's no confusion as to the fact that her rights have been taken away, that they've been encroached upon. She understands she's in jail. She knows whether or not she did anything unlawful to put herself there. So she knows that she had a valid prescription, presumably based on allegations. And there's no contention that the prescription wasn't a valid prescription. We haven't gotten to that point, Your Honor, in the discovery. I don't think that there at this point the police released her, presumably because the prescription was valid. But at that time, you know, the day that she's first arrested and incarcerated, she understands that an act has occurred that's wrongful from her perspective and that she's been injured because she's been put in jail. This isn't the only time the discovery rule has been applied by the courts is when there's been kind of no understanding and no way to glean that you've been injured. So, for instance, in the case cited by Plaintiff in their brief, the Nolan case was cited. And this is an asbestos case. We all understand that these are latent injuries that you receive from asbestos exposure that occur over long periods of time. And quite frequently the injury is not learned until well after the statute is run. That's not the case here. The case here, Plaintiff knew the day she was incarcerated that she was injured, that it was wrongfully done, and therefore discovered that the statute of limitations should begin to run from that day. In conclusion, I would just ask that the court affirm the circuit court's ruling dismissing the case. Thank you. Thank you, counsel. I can answer any questions if there are any. Did your client ever go to the police department and make the effort to get a police report? I don't know that, Judge. I'm not aware of that. That's not in the record. I wanted to make sure that the letter that I wrote to CBS was a year after she was incarcerated. It took her a year to, I don't want to say figure out what happened, but that was when she came to see me. And I just want to go to two points. One, the discovery rule is intended to protect the plaintiff who does not discover until some point later what happened to them. And, again, we go back to if somebody was in a coma, if they had some reason to not know and they could not discover, then the statute doesn't begin to run until they do know. That's exactly what happened in this case. She's in jail. She has no ability to discover what happened. There's no evidence that she was given any charging document, as the court identified. She was never arraigned. She was never given a lawyer. And how is it that she could discover anything while she's incarcerated? Well, she went to see you a year after she was incarcerated, so she had another year to see whether or not she had an actionable case. Judge, that's always the case with the discovery rule. There's cases where it's a month, it's a week, it's six months, and it all happens before the statute of limitations and they have time. But why doesn't she have the same two years that every other plaintiff does when, in the unique facts of this case, the defendant is the one that controlled her ability to investigate a claim? That's the argument of the plaintiff. And I think that, again, in the complaint, every day that she was incarcerated, we allege that the defendant had a duty to investigate her claim, and each of those is a separate date, and I believe that those ran on the 13th, 14th, 15th, and 16th, and that they violated that duty on each day, again, under the unique facts of this case. That's why there's no case cited by me or defense counsel right on point because there are none. Thank you. Thank you, Justice. I appreciate the briefs and arguments. Counsel will take the case under advisement. The court will be in a short recess and we will resume oral argument.